HOWELL, J., recused.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## WIDOW A. MORPHY *v.* P. C. BLANCHIN.

The warranty respecting the seller has two objects: the first is the buyer's peaceable possession of the thing sold, and the second is the hidden defects of the thing sold, or its redhibitory vices.
Redhibition is called the avoidance of a sale on account of some vice or defect of the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
If the thing affected with the vices has perished, through the badness of its quality, the seller must sustain the loss.

APPEAL from the Second District Court of New Orleans, *Whitaker,* J. *M. Blache,* for plaintiff. *L. Castera,* for defendant.

LABAUVE, J. This is a redhibitory action to annul the sale of a female slave, bought by plaintiff from defendant, on the 28th March, 1861, for the sum of $800 cash.

It is alleged that, at the time of the sale, the slave was laboring under an incurable disease, to wit: phthisis, or pulmonary consumption, which existed in the slave long before. The slave was to have been delivered to the plaintiff on the 15th of May, 1861. The answer is substantially a denial of plaintiff's demand, and concludes by demanding, in reconvention, $300, for keeping, medical attendance, medicines and care, on account of the slave while she was sick. The District Court gave judgment for plaintiff, and the defendant appealed.

It appears that the slave was never in the possession of plaintiff, and that, at the time when she was to have been delivered, the 15th May, 1861, she was already sick, and plaintiff refused to receive her.

Dr. Fagot, the only physician who examined the slave, about 22d May, 1861, while she was in the possession of defendant, says that he subjected her to auscultation, which, he says, is the mode by which physicians generally ascertain the diseases of the lungs, besides the external symptoms which characterize those diseases. He says that the

disease had so far progressed that the diagnosis was certain; that he ascertained the existence of tubercles in the lungs, and ulceration, called in French, *cavernes*. On his own examination, he says that he discovered the tubercles in the lungs by auscultation, which is the more certain mode when the disease has made some progress. Dr. Lambert says that in such a case the diagnosis is more certain.

Dr. Fagot also says: I consider the slave was laboring under that disease for some time; and, when I examined her, the disease had already advanced. The disease existed in the slave probably several months before I examined her, but I cannot say how long. I think the disease caused her death. It is a disease which is generally considered by physicians as incurable.

Dr. Lambert says: There are instances of persons dying of consumption in three, four and five weeks, sometime, but not the general rule. I have had only three or four cases of acute or rapid consumption during my practice in this city, for twenty-five years. The slave died in November, 1861.

It appears from the answer that the defendant was anxious to deliver the slave on the 15th May, 1861. The said slave was then sick.

We agree with our learned brother, the Judge below, that the disease existed at the time of the sale; and, for the reasons given by the Judge a quô, the judgment must be affirmed. 19 L. 418; C. C. Arts. 2451, 2496 and 2510.

It is therefore ordered and decreed, that the judgment of the District Court be affirmed, with costs.